*Fee Paid*
*Receipt # 150010989*

35

# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
### SOUTHERN DIVISION

**MARK W. DOBRONSKI,**
an individual,

                Plaintiff,

v.

**CHW GROUP, INC.,**
a New Jersey corporation,
d/b/a **CHOICE HOME WARRANTY,**

                Defendant.

Case No.

Case: 2:24-cv-11649
Assigned To : Parker, Linda V.
Referral Judge: Altman, Kimberly G.
Assign. Date : 6/26/2024
Description: CMP MARK DOBRONSKI V. CHW GROUP,
INC. ET AL (EV)

---

## **COMPLAINT**

    NOW COMES the Plaintiff, MARK W. DOBRONSKI, appearing *in propria persona*, and for his complaint against the named Defendant, alleges:

    1.  This matter arises under the Telephone Consumer Protection Act of 1991 ("TCPA"), 47 U.S.C. § 227, *et seq.*, the Michigan Telephone Companies as Common Carriers Act ("MTCCCA"), M.C.L. § 484.101, *et seq.*, and the Michigan Home Solicitation Sales Act ("MHSSA"), M.C.L. § 445.101, *et seq.*

### **Parties**

    2.  Plaintiff is an individual, of the age of majority, a citizen of the United States of America, is domiciled in and has a place of business in Orange County, Florida, has a residence and place of business in Washtenaw County, Michigan, and has a place of

business in Wayne County, Michigan.

3. Defendant CHW GROUP, INC. ("CHW"), is a corporation organized and existing under the laws of the State of New Jersey, that does business under the fictitious business name of CHOICE HOME WARRANTY, with its principal business office address being 2147 Route 27 South, Suite 400, Edison, New Jersey 08817.

## **Jurisdiction**

4. This Court has jurisdiction over the subject matter of this complaint pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 1367.

5. This Court has limited personal jurisdiction over Defendant CHW pursuant to M.C.L. § 600.715, as a result of the defendant transacting any business within the state; and/or doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort.

## **Venue**

6. Venue is proper in this Court, pursuant to 28 U.S.C. § 1391(b)(2), as the tortious or illegal telephone calls complained of herein were received in this judicial district and while Plaintiff was located in this judicial district, to wit, the Eastern District of Michigan.

## **Preliminary Statement**

7. As the Supreme Court recently explained, "Americans passionately disagree amount many things. But they are largely united in their disdain for robocalls." *Barr v. American Association of Political Consultants LLC*, 140 S. Ct. 2335, 2343 (2020).

8. The Federal Government receives a staggering number of complaints about robocalls – 3.7 million complaints in 2019 alone. *Id.*

9. In response to widespread public outrage over intrusive telemarketing calls to homes and businesses, the United States Congress acted to prevent persons, like Defendant, from invading American citizen's privacy and to prevent abusive "robo-calls" by enacting the TCPA.

10. According to the Federal Communications Commission ("FCC"), "Unwanted calls and texts are the number one complaint to the FCC."

11. In regard to such telephone solicitations, Senator Hollings of South Carolina, the primary sponsor of the TCPA, explained, "computerized calls are the scourge of modern civilization. They wake us up in the morning; they interrupt our dinner at night; they force the sick and elderly out of bed; they hound us until we want to rip the telephone right out of the wall... these computerized telephone calls threaten our personal safety... These machines are out of control, and their use is growing by 30 percent every year. It is telephone terrorism, and it has got to stop...." 137 Cong. Rec. 30821-30822 (Nov. 7, 1991).

12. According to YouMail, Inc., a company which tracks robocall activity and publishes the YouMail Robocall Index, during calendar year 2023 alone, American consumers were bombarded with over 55.05 *billion* robocalls; an average of over 165 robocalls to each man, woman, and child. [Source: www.robocallindex.com ].

13.  In 2021, nearly 1 in 3 Americans say they have fallen victim to a phone scam in the past year, with reported losses to phone scams exceeding $29.8 Billion. [Source:  www.cndb.com/2021/06/29/americans-list-billions-of-dollars-to-phone-scams-over-the-past-year.html ].

14.  Congress has found that interstate telemarketing fraud has become a problem of such magnitude that the resources of the Government are not sufficient to ensure adequate consumer protection from such fraud.

15.  As a result, in enacting the TCPA, Congress intentionally created a legally enforceable bounty system, not unlike *qui tam* statutes, to incentivize the assistance of aggrieved private citizens to act as "private attorneys general" in enforcing federal law.

## Telephone Consumer Protection Act

16.  In 1991, Congress enacted the TCPA to restrict the use of sophisticated telemarketing equipment that could target millions of consumers *en masse*.  Congress found that these calls were not only a nuisance and invasion of privacy to consumers specifically, but were also a threat to interstate commence generally. *See* S. Rep. No. 102-178, at 2-3, 1991 U.S.C.C.A.N. 1968, 1969-71, 1991 WL 211220 (1991).

17.  The TCPA imposes restrictions on the use of automated telephone equipment including, *inter alia*, the use of recorded messages. 47 U.S.C. § 227(b)(1).

18.  Pursuant to authority delegated by Congress to the FCC under the TCPA at 47 U.S.C. § 227(b)(2), the FCC has adopted regulations to implement the aforesaid

restrictions on use of automated telephone equipment. The TCPA implementing regulations are promulgated at 47 C.F.R. 64.1200(a), *et seq.*

19. As part of the restrictions on use of automated telephone equipment, Congress created a private right of action for aggrieved persons to received $500 in damages for *each* violation of the subsection of the statute or the regulations prescribed thereunder, which amount the court may treble if the court finds that the defendant willfully or knowingly violated the statute or the regulations. 47 U.S.C. § 227(b)(3).

20. Additionally, the Congress also sought to protect subscriber privacy rights, and delegated to the FCC authority to initiate a rulemaking proceeding and to adopt to implement methods and procedures that the FCC determines are most efficient to accomplish the need to protect telephone subscribers' privacy rights to avoid receiving telephone solicitations to which they object. 47 C.F.R. § 227(c)(1). The FCC conducted such a rulemaking and implemented regulations to protect telephone subscribers' privacy rights. *See In re Rules and Regulations Implementing the TCPA*, 68 FR 44144, 2003 WL 21713245 (2003). The regulations implemented by the FCC are promulgated at 47 C.F.R. § 64.1200(c), *et seq.*, 47 C.F.R. § 64.1200(d), *et seq.*, and 47 C.F.R. § 64.1601(e).

21. As part of the protection of subscriber privacy rights, Congress created a private right of action for aggrieved persons to receive $500 in damages for *each* violation of the subsection of the statute or the regulations prescribed thereunder,

which amount the court may treble if the court finds that the defendant willfully or knowingly violated the statute or the regulations. 47 U.S.C. § 227(c)(5).

## State Telemarketing Laws

22.  The Michigan Legislature, like many other state legislatures, has enacted their own laws to combat abusive telemarketing.

23.  Congress has expressly declared that these state laws are not federally preempted. 47 U.S.C. § 227(f)(1).

## Michigan Telephone Companies as Common Carriers Act

24.  The MTCCCA places prohibitions on the delivery of commercial advertising by recorded message, or to deliver intrastate commercial advertising if the caller activates a feature to block the display of caller identification information. M.C.L. § 484.125(2).

25.  The MTCCCA creates a private right of action for a subscriber contacted by a caller in violation of this section to bring an action to recover damages of $1,000.00, together with reasonable attorneys' fees. M.C.L. § 484.125(5).

26.  The Michigan Legislature also has promulgated that a caller who violates this section is guilty of a misdemeanor, punishable by a fine of $1,000.00 or imprisonment for 10 days, or both. M.C.L. § 484.125(9).

## Michigan Home Solicitation Sales Act

27.  The Michigan Legislature also bans unfair or deceptive acts or practices by

telephone solicitors and places restrictions and proscriptions on telephone solicitations.

28.  The MHSSA proscribes, *inter alia*, that a telephone solicitor shall not make a telephone solicitation to a residential telephone subscriber whose residential telephone number is on the federal do-not-call list.  M.C.L. § 445.111a(5).

29.  The MHSSA also requires that a telephone a person making a telephone solicitation to a residential telephone subscriber shall state his or her name and the full name of the organization or other person on whose behalf the call was initiated and provide a telephone number of the organization or other person on request, and that a natural person must be available to answer the telephone number at any time when telephone solicitations are being made. M.C.L. § 445.111b(1).

30.  The MHSSA also proscribes that a telephone solicitor shall not intentionally block or otherwise interfere with the caller ID function on the telephone of a residential telephone subscriber to whom a telephone solicitation is made so that the telephone number of the caller is not displayed on the telephone of the residential telephone subscriber.  M.C.L. § 445.111b(3).

31.  The MHSSA provides that a person who suffers loss as a result of violation of the MHSSA may bring an action to recover actual damages or $250.00, whichever is greater, together with reasonable attorney fees.  M.C.L. § 445.111c(3).

32.  The Michigan Legislature apparently wants to be clear that telephone solicitors take the MHSSA seriously, as a person who knowingly or intentionally

violates the MHSSA may be deemed guilty of a misdemeanor punishable by imprisonment for not more than 6 months or a fine of not more than $500.00, or both. M.C.L. § 445.111c(2).

### General Allegations

33.  Plaintiff's residential and cellular telephone lines have been besieged with telemarketing calls hawking such things as alarm systems, Google listings, automobile warranties, health insurance, life insurance, credit cards, and even financial miracles from God.  Some calls are blatant scams, including calls purportedly from the Social Security Administration, the U.S. Drug Enforcement Administration, and other government agencies claiming, *inter alia*, that arrest warrants have been issued against Plaintiff for alleged drug trafficking and money laundering activities.

34.  Plaintiff's residential telephone numbers are 734-***-1212, 734-***-2424, and 734-***-1000.

35.  Plaintiff's cellular telephone number is 734-***-9671.

36.  Plaintiff's residential and cellular telephone numbers, *supra*, are registered on the National Do Not Call Registry maintained by the United States Federal Trade Commission pursuant to 16 C.F.R. Part 310 and have been so registered continuously since at least May 27, 2022 and at all times subsequent thereto.

37.  Plaintiff uses his cellular telephone primarily for personal, family, and household communications.

8

38. Courts are legally bound to give great deference to the FCC's interpretations of the TCPA and its own regulations.

39. The FCC has declared that wireless subscribers who have registered their cellular telephone number on the national do-not-call list are presumed to be "residential subscribers."

40. Plaintiff's residential telephone services are provided via Voice Over Internet Protocol ("VOIP") technology and interconnect with the public switched telephone network via a broadband Internet connection instead of a conventional telephone line, which allows Plaintiff the ability to answer calls at the residence he is staying at. In the instance of the illegal telemarketing calls alleged in this Complaint, the calls were received by Plaintiff while he was at his residence located in Washtenaw County, Michigan.

41. The FCC has issued a declaratory ruling defining "called party" as "the subscriber, i.e., the consumer assigned the telephone number dialed and billed for the call, or the non-subscriber customary user of a telephone number included in a family or business calling plan." *In the Matter of Rules & Regulations Implementing the TCPA*, 30 FCC Rcd. 7961, 7978, 2015 WL 4387780, at *26, ¶ 73 (FCC July 10, 2015).

42. Plaintiff is the subscriber to and a customary user of the called telephone lines, is the one that was the actual recipient of the telephone calls at issue in this complaint, and suffered the nuisance and invasion of privacy of same. Thus, Plaintiff

has standing to bring this action for alleged violations of TCPA's robocall provisions. See *Leyse v. Bank of America Nat. Ass'n*, 804 F.3d 316, 324 (3rd Cir. 2015).

43. At no time relevant hereto has Plaintiff or any other authorized person requested, consented, permitted, or authorized the contact from the Defendant or Defendant's representatives.

44. At no time has Plaintiff provided permission to the Defendant or Defendant's representatives to engage in telephone solicitation with the Plaintiff via telephone.

45. At no time has Plaintiff provided "prior express consent" or "prior express written consent" (as those terms are defined under the TCPA and as interpreted by the FCC) for the Defendant or anyone acting on behalf of the Defendant to initiate any telephone call that includes or introduces an advertisement or constitutes telemarketing, using an automatic telephone dialing system or an artificial or prerecorded voice, to Plaintiff's residential telephone number.

46. At no time has Plaintiff had an "established business relationship" (as that term is defined under the TCPA and as interpreted by the FCC) with the Defendant.

47. The FCC has declared that a necessary element for a person to provide "consent" is that the person must knowingly and voluntarily provide the telephone number at which they are authorizing telemarketing calls to be received at. For example, capturing a caller's telephone number by a Caller ID or ANI device cannot

be considered consent to receive telemarketing calls. *In the Matter of Rules and Regulations Implementing the TCPA*, 7 FCC Rcd. 8752, 8769, 1992 WL 690928, at *11, ¶ 31 (1992).

48. Consent can be "presumed." The TCPA and the Commission's rules plainly require express consent, not implied or "presumed" consent. *In re Rules and Regulations Implementing the TCPA*, 30 FCC Rcd. 7961, 7991, 2015 WL 4387780, at *20, ¶ 52 (2015).

49. The TCPA clearly requires that consumers 'opt in' before they can be contacted. *In re Rules and Regulations Implementing the TCPA*, 30 FCC Rcd. 7961, 8004, 2015 WL 4387780, at *29, ¶ 80 (2015).

50. The FCC has declared that "[p]urporting to obtain consent during the call... does not constitute the *prior* consent necessary to deliver the message in the first place as the request... is part of the telemarketing." *In re Rules and Regulations Implementing the TCPA*, 18 FCC Rcd. 14014, 14019, 2003 WL 21517853, at *49, ¶ 142 (2003) [Emphasis as in original].

51. For each and every call alleged herein initiated to Plaintiff's telephone line, Plaintiff suffered the injury of invasion of privacy and intrusion on Plaintiff's right of seclusion.

52. For each and every call alleged herein initiated to Plaintiff's telephone line, Plaintiff suffered the injury of the occupation of the telephone line by unwelcome calls,

making the phone unavailable for legitimate callers or outgoing calls, including emergency calls, when the telephone line was seized by Defendant's calls.

53. For each and every call alleged herein initiated to Plaintiff's telephone line, Defendant caused an injury in the form of a nuisance and annoyance to the Plaintiff. For calls that were answered, Plaintiff had to go to the unnecessary trouble of answering them. Even for unanswered calls, Plaintiff had to deal with missed call notifications and call logs that reflected the unwanted calls. This also impaired the usefulness of these features on Plaintiff's telephone, which features are designed to inform the user of important missed communications.

54. Each and every call placed without consent by Defendant alleged herein to Plaintiff's telephone lines resulted in the injury of a trespass to Plaintiff's chattel, namely Plaintiff's telephone line and its telephone services.

55. For purposes of the TCPA, the FCC has defined "willfully or knowingly" to mean that the violator knew that he was doing the act in question, in this case, initiating a telephone solicitation, irrespective of any intent to violate the law. A violator need not know that his action or inaction constitutes a violation; ignorance of the law is not a defense or mitigating circumstance.

## The Scheme

56. Defendant CHW offers home warranty plans to consumers purportedly protecting against the high cost of repair or replacement of properly maintained major

systems and appliances in residential households.

57. CHW utilizes telemarketing as a cost-effective method to reach out to and solicit consumers across the United States, including in the state of Michigan, regarding CHW's home warranty plans.

58. Unfortunately, CHW's telemarketing goes further than permitted by law, as CHW will initiate telemarketing calls to consumers without regard to whether CHW has prior express consent to contact the consumer's telephone number, and/or whether the consumer's telephone number appears on the National Do Not Call Register.

59. As part of its telemarketing strategy, CHW utilizes an automatic telephone dialing system, sometimes referred to as a predictive dialer, which can dial out thousands of calls per hour for a fraction of a cent per call, and the need for a live operator to speak with a called party (and, hence, the expense) is substantially reduced to only those occasions when the computerized system has been detected that a consumer is actually on the line.

60. The automatic telephone dialing system uses a random or sequential number generator to determine the order in which to pick phone numbers from a pre-produced list, storing those numbers, and dialing them at random times.

61. Indicia of the use of an automatic telephone dialing system includes, *inter alia*: upon answering an incoming call, a click or electronic sound is heard followed by a several second delay before a live telemarketer begins to speak; a prerecorded or

artificial voice message; or, manipulated caller identification information has been transmitted.

## Call 1

62. On July 25, 2023, at approximately 2:13 P.M., Defendant or Defendant's representative initiated a telemarketing call to Plaintiff's residential telephone number 734-***-1212.

63. The caller identification number information displayed was 734-789-5596.

64. Upon Plaintiff answering the call by saying "hello", Plaintiff heard a boink sound and noted a 5 second delay, and then heard a live person identify himself as John with Choice Home Warranty.

65. John began asking whether Plaintiff was a homeowner and whether Plaintiff had ever heard of a home warranty.

66. Plaintiff asked where CHW was located; John responded with Edison, New Jersey.

67. Plaintiff made demand to John to be provided with a copy of CHW's do-not-call policy, to which John responded: "What's that?".

68. Plaintiff told John that Plaintiff's telephone number was on the federal do not call list; John abruptly hung up.

69. Immediately after the call terminated, Plaintiff dialed the caller identification number displayed (734-789-5596) to reiterate a do-not-call demand; the call rang 8

14

times and then went to a busy signal.

## Call 2

70.  On August 1, 2023, at approximately 4:38 P.M., Defendant or Defendant's representative initiated a telemarketing call to Plaintiff's residential telephone number 734-***-2424.

71.  The caller identification number information displayed was 734-238-6695.

72.  Upon Plaintiff answering the call by saying "hello", Plaintiff heard a click sound and noted a 3-4 second delay, and then heard a live person identify himself as John with Choice Home Warranty.  The individual sounded to be the same "John" as in Call 1, *supra*.

73.  John began asking whether Plaintiff was a homeowner and whether Plaintiff had ever heard of a home warranty.

74.  In order to better identify the caller, Plaintiff feigned interest.

75.  John asked for Plaintiff's name and zipcode, and Plaintiff provided the *faux* name of Arthur Bach and 48130.

76.  John then transferred the call to another telemarketer who identified himself as Ron with Choice Home Warranty.

77.  Plaintiff confronted Ron regarding Plaintiff's telephone number is registered on the National Do Not Call Registry and that Plaintiff should not be receiving any telemarketing calls from CHW.

15

78.  Ron responded that Plaintiff "must have went online and filled out a form".

79.  Plaintiff responded that Plaintiff did not go online to fill out any form, and inquired of Ron as to when and where Plaintiff allegedly filled out such a form; Ron hung up.

80. Immediately after the call terminated, Plaintiff dialed the caller identification number displayed (734-238-6695) to reiterate a do-not-call demand; the call rang 8 times and then went to a busy signal.

## Call 3

81.  On August 7, 2023, at approximately 2:57 P.M., Defendant or Defendant's representative initiated a telemarketing call to Plaintiff's cellular telephone number 734-***-9671.

82.  The caller identification number information displayed was 734-332-8030.

83.  Upon Plaintiff answering the call by saying "hello", Plaintiff heard a click sound and noted a 4-5 second delay, and then heard a live person identify himself as Mike with Choice Home Warranty.

84.  John began asking whether Plaintiff was a homeowner and whether Plaintiff had ever heard of a home warranty.

85. Plaintiff confronted John that Plaintiff's cellular number is on the Natioanl Do Not Call List.  John stated "fuck off" and hung up.

86. Immediately after the call terminated, Plaintiff dialed the caller identification

number displayed (734-332-8030) for purposes of reiterating a do-not-call demand; the call rang 3 times and then went to a busy signal.

### Call 4

87. On August 14, 2023, at approximately 1:20 P.M., Defendant or Defendant's representative initiated a telemarketing call to Plaintiff's cellular telephone number 734-***-9671.

88. The caller identification number information displayed was 810-202-1508.

89. Upon Plaintiff answering the call by saying "hello", Plaintiff heard a click sound and noted a 3 second delay, and then heard a live person identify himself as George with Choice Home Warranty.

90. In the background, numerous other telemarketers could be heard speaking.

91. George began by asking if Plaintiff had any questions about a home warranty and then began to pre-qualify Plaintiff.

92. George then asked Plaintiff how if he wanted to pay by credit card, and sought Plaintiff's credit card number. Plaintiff supplied a controlled credit card number to George, specifically designed to decline the transaction but log the merchant details with Plaintiff's financial institution.

93. George informed Plaintiff that the credit card was declined; Plaintiff sought George's telephone number for purposes of Plaintiff calling George back. George supplied a telephone number of 888-503-6847. George said that he would call Plaintiff

17

back; Plaintiff told George not to call Plaintiff, that Plaintiff would call George later.

95. At no time during the telephone call did Plaintiff provide his telephone number.

96. Immediately after the call terminated, Plaintiff dialed the caller identification number displayed (810-202-1508) for purposes of reiterating a do-not-call demand; the call rang 5 times and then went to a busy signal.

97. On August 14, 2023 at 1:24 P.M., Plaintiff's financial institution logged a credit card charge attempt by CHW to Plaintiff's controlled credit card.

## Call 5

98. On August 14, 2023, at approximately 2:36 P.M., Defendant or Defendant's representative initiated a telemarketing call to Plaintiff's cellular telephone number 734-***-9671.

99. The caller identification number information displayed was 330-657-8121.

100. Upon Plaintiff answering the call by saying "hello", Plaintiff heard a click sound and noted a 4 second delay, and then heard a live person identify himself as George but without identifying the company he was calling on behalf of.

101. This George was the same George discussed in Call 4, *supra*.

102. In the background, numerous other telemarketers could be heard speaking.

103. George again attempted to solicit Plaintiff regarding a home warranty.

104. At no time during the telephone call did Plaintiff provide his telephone

number.

## Call 6

105.    On August 15, 2023, at approximately 1:10 P.M., Defendant or Defendant's representative initiated a telemarketing call to Plaintiff's cellular telephone number 734-***-9671.

106.  The caller identification number information displayed was 331-472-0632.

107.  Upon Plaintiff answering the call by saying "hello", Plaintiff heard a click sound and noted a 9 second delay, and then heard a live person identified herself as Ruby from Choice Home Warranty.

108.  Ruby began a pitch regarding a "summer sale today only promotion" for a home warranty.

109.  The call was then transferred to another telemarketer who identified herself as Lisa with Choice Home Warranty.

110.  Lisa continued a pitch regarding a home warranty.

111.  Plaintiff inquired as to where CHW was located; Lisa responded "on Route 27 in New Jersey" and then abruptly hung up.

112. At no time during the telephone call did Plaintiff provide his telephone number.

113.  Immediately after the call terminated, Plaintiff dialed the caller identification number displayed (331-472-0632) for purposes of reiterating a do-not-

19

call demand; the call rang 5 times and then went to a busy signal.

## Call 7

114. On November 11, 2023, at approximately 12:18 P.M., Defendant or Defendant's representative initiated a telemarketing call to Plaintiff's residential telephone number 734-***-2424.

115. The caller identification number information displayed was 734-397-8820.

116. Upon Plaintiff answering the call by saying "hello", Plaintiff heard a click sound and noted a 9 second delay, and then heard a live person identified herself as Sarah from Choice Home Warranty.

117. Sarah asked in Plaintiff is a homeowner and began a pitch regarding a home warranty.

118. Several other telemarketers could be heard talking in the background.

119. The call was then transferred to another telemarketer who identified himself as Jason with Choice Home Warranty.

120. Jason then began asking pre-qualifying questions and then abruptly terminated the call.

121. At no time during the telephone call did Plaintiff provide his telephone number.

122. Immediately after the call terminated, Plaintiff dialed the caller identification number displayed (734-397-8820) for purposes of reiterating a do-not-

call demand; the call rang 8 times and then went to a busy signal.

## Call 8

123.   On November 22, 2023, at approximately 2:34 P.M., Defendant or Defendant's representative initiated a telemarketing call to Plaintiff's residential telephone number 734-***-1212.

124.   The caller identification number information displayed was 734-721-2142.

125.   Upon Plaintiff answering the call by saying "hello", Plaintiff heard a click sound and noted a 9 second delay, and then heard a live person identified herself as Charlie from Choice Home Warranty.

126.   Charlie stated that they were "running a promotion to homeowners in your area" and asked if Plaintiff is a homeowner, to which Plaintiff responded affirmatively.

127.   Several other telemarketers could be heard talking in the background.

128.   The call was then transferred to another telemarketer who identified himself as Jason with Choice Home Warranty; this was the same Jason identified in Call 7, *supra*.

129.   Jason began by asking if Plaintiff was a homeowner, then suddenly paused.

130.   Charlie then came back onto the line and asked in Plaintiff had a savings or checking account.

131.   Charlie then paused for approximately 10 seconds and then exclaimed "Your number is on DNC list!," uttered some words in a foreign language – likely,

Arabic -- and then abruptly terminated the call.

132. At no time during the telephone call did Plaintiff provide his telephone number.

133. Immediately after the call terminated, Plaintiff dialed the caller identification number displayed (734-721-2142) for purposes of reiterating a do-not-call demand; the call rang 10 times and then went to a busy signal.

## Call 9

134. On January 23, 2024, at approximately 9:58 A.M., Defendant or Defendant's representative initiated a telemarketing call to Plaintiff's residential telephone number 734-***-1212.

135. The caller identification number information displayed was 337-362-1745.

136. Upon Plaintiff answering the call by saying "hello", Plaintiff heard a click sound and noted a 3 second delay, and then heard a live person identified herself as Marla from Choice Home Warranty.

137. Marla asked whether Plaintiff was homeowner.

138. The call was then transferred to another telemarketer who identified himself as Jamal with Choice Home Warranty.

139. Jamal began pitching a home warranty to Plaintiff.

140. Plaintiff asked where CHW was located, to which Jamal responded Edison, New Jersey.

141.   Plaintiff asked if CHW had a written do not call policy, to which Jamal responded "no".

142.   Plaintiff explained that Plaintiff's telephone number was on the national do not call list and that Plaintiff should not be receiving telemarketing calls from CHW.

143.   Jamal expressed outrage at Plaintiff for "wasting his time" and abruptly hung up.

144.   At no time during the telephone call did Plaintiff provide his telephone number.

145.   Immediately after the call terminated, Plaintiff dialed the caller identification number displayed (337-362-1745) for purposes of reiterating a do-not-call demand; the call was answered by a recorded message which stated: "Thank you for calling.  We are currently closed.  Please call back during normal business hours."

## Call 10

146.   On February 2, 2024, at approximately 10:52 A.M., Defendant or Defendant's representative initiated a telemarketing call to Plaintiff's residential telephone number 734-***-1000.

147.   The caller identification number information displayed was 734-418-9511.

148.   Upon Plaintiff answering the call by saying "hello", Plaintiff heard a click sound and noted a 3 second delay, and then heard a live person identified herself as Brenda from Choice Home Warranty calling regarding a "big game special promotion

23

for your home systems and appliances."

149. The call was then transferred to another telemarketer who identified himself as Charlie from Choice Home Warranty.

150. Charlie began to pitch a home warranty.

151. Plaintiff made request to be supplied with a copy of CHW's written do not call policy; Charlie responded: "Yeah, sure, hold on" and then transferred the call to a recording that asked for Plaintiff to select "1", "2", or "3". Plaintiff pressed "1".

152. The call was then transferred to another telemarketer who identified himself as Dave with Choice Home Warranty.

153. Plaintiff made demand for a copy of CHW's written do not call policy, to which Dave responded that they do not have one.

154. Plaintiff made demand for the telephone number and address of CHW's home office. Dave could not provide a telephone number for the home office, but did provide an address of 2147 Route 27 South, 4th Floor, Edison, New Jersey 08817.

155. Plaintiff made demand that Dave put Plaintiff on CHW's do-not-call list and hung up.

## Call 11

156. On February 6, 2024, at approximately 10:45 A.M., Defendant or Defendant's representative initiated a telemarketing call to Plaintiff's residential telephone number 734-***-1000.

24

157.  The caller identification number information displayed was 734-418-9511.

158.  Upon Plaintiff answering the call by saying "hello," Plaintiff heard a click sound and noted a 3 second delay, and then heard a live person identified himself as John from Choice Home Warranty calling regarding a "big game special which we have launched today."

159.  The call was then transferred to another telemarketer who identified himself as Ruben from Choice Home Warranty.

160.  Ruben began pitching a home warranty to Plaintiff.

161.  Plaintiff asked where CHW is located, to which he responded "our main headquarters is in Edison, New Jersey."

162.  Plaintiff Ruben if they had a written do not call policy, to which Ruben responded: "No sir."

163.  Plaintiff explained that Plaintiff's telephone number is listed on the national do not call list and that Plaintiff should not be receiving telemarketing calls from CHW.

164.  Plaintiff asked Ruben to place Plaintiff's telephone number on CHW's do-not-call list; the call abruptly terminated.

**Follow-Up Investigation**

165.  Plaintiff has reason to believe, and does believe, that Plaintiff has received additional unwanted telemarketing calls from CHW which Plaintiff has not logged, the

dates and times of which are known to CHW.  During the course of discovery, as Plaintiff identifies such additional unwanted telemarketing calls, Plaintiff will amend this complaint to incorporate same.

166.  Defendant CHW is no clearly no stranger to the TCPA and  violations of the TCPA, as review of the Court's PACER case index reveals well in excess of 50 different civil suits brought against CHW alleging illegal telemarketing calls initiated by CHW.

167.   Similarly, the Attorney General of the State of Arizona has brought a consumer fraud action against CHW stemming from alleged deceptive and fraudulent business practices engaged in by CHW.

## COUNT I
## VIOLATION OF THE TCPA - AUTODIALER CALL

168.  Plaintiff incorporates the allegations of paragraphs 1 through 167, *supra.*

169.   Each of Calls 3, 4, 5, and 6, *supra*, were in violation of the TCPA regulations, specifically 47 C.F.R. § 64.1200(a)(2), as Defendant or Defendant's agent initiated a telephone call that constitutes telemarketing using and automatic telephone dialing system without the prior express written consent of the called party.

170.  The aforesaid violations of the TCPA were willful and/or knowing as the is evidenced by their repetitious nature.

## COUNT II
## VIOLATION OF THE TCPA - DO NOT CALL

171. Plaintiff incorporates the allegations of paragraphs 1 through167, *supra*.

172. Each of Calls 1 through 11, *supra*, were in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1200(c)(2), as Defendants or Defendants' agent initiated a telephone solicitation to a residential telephone subscriber who had registered his telephone number on the national do-not-call registry of persons who do not wish to receive telephone solicitations that is maintained by the Federal Government.

173. The aforesaid violations of the TCPA were wilful and/or knowing as is evidenced by the repeated number of calls, the repetitive do not call demands made by the Plaintiff to the callers, and the admissions of callers that Plaintiff's telephone number was on the do not call list.

## COUNT III
## VIOLATION OF THE TCPA - INITIATING WITHOUT POLICY

174. Plaintiff incorporates the allegations of paragraphs 1 through167, *supra*.

175. Each of Calls 1 through 11, *supra*, were in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1200(d), as Defendant or Defendant's agent initiated a call for telemarketing purposes without have instituted a procedure for maintaining a list of persons who request not to receive telemarketing calls by or on behalf of that person or entity.

176. The aforesaid violations of the TCPA were wilful and/or knowing as is evidenced by the repeated number of calls, as well as the several calls where the caller

27

admitted to not having a written do not call policy.

## COUNT IV
## VIOLATION OF THE TCPA - FAIL TO PROVIDE DNC POLICY

177.  Plaintiff incorporates the allegations of paragraphs 1 through167, *supra*.

178.   Each of Calls 1, 9, and 10, *supra*, were in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1200(d)(1), as Defendant or Defendant's failed to provide a copy of Defendant's written policy for maintaing a do-not-call list to Plaintiff when demanded.

179.  The aforesaid violations of the TCPA were wilful and/or knowing as is evidenced by the several calls where the caller admitted to not having a written do not call policy.

## COUNT V
## VIOLATION OF THE TCPA - FAILURE TO IDENTIFY

180.  Plaintiff incorporates the allegations of paragraphs 1 through167, *supra*.

181.   Call 5, *supra*, was in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1200(d)(4), as Defendant or Defendant's failed to provide the name of the person or entity on whose behalf the call was being made.

182.   The aforesaid violation of the TCPA was wilful and/or knowing as is evidenced by the lack of CHW to have required policies and training in effect.

## COUNT VI
## VIOLATION OF THE TCPA - IMPROPER CALLER ID

183.  Plaintiff incorporates the allegations of paragraphs 1 through 167, *supra*.

184.   Each of the Calls 1 through 4, and 6 through 9, *supra*, were in violation of the TCPA implementing regulations, specifically 47 C.F.R. § 64.1601(e)(1), as Defendant and/or Defendant's agent failed to provide caller identification information displaying a telephone number which would permit any individual to make a do-not-call request during regular business hours.

185.   The aforesaid violation of the TCPA was wilful and/or knowing as is evidenced by the repeated instances of same.

## COUNT VII
## VIOLATION OF THE MTCCCA

186.   Plaintiff incorporates the allegations of paragraphs 1 through 167, *supra.*

187.   As a general rule, telephone area codes indicate the geographic area in which a telephone is located.

188.   Telephone area codes 734 and 810 are geographically assigned in the southeast area of Michigan.

189.   Relevant to the calls alleged in this action, each of Plaintiff's residential and cellular telephone numbers has an area code of 734.

190.   Each of calls through 1 through 4, 7, 8, 10, and 11, *supra*, displayed caller identification numbers with a Michigan area code.

191.   Each of Calls 1 through 4, 7, 8, 10, and 11, *supra*, were in violation of the MTCCA, specifically M.C.L. 484.125(2)(b), as Defendant or Defendant's agent used a telephone line to contact a susbcriber at the subscriber's residence telephone number

to deliver or attempt to deliver intrastate commercial advertising and having activated a feature to block caller identification information that would otherwise be available to the subscriber, to wit: a telephone number at which the subscriber can call to make a do-not-call demand.

**COUNT VIII**
**VIOLATION OF THE MHSSA**

192.  Plaintiff incorporates the allegations of paragraphs 1 through 167, *supra*.

193.  Each of Calls 1 through 11, *supra*, were in violation of the MHSSA, specifically: M.C.L. § 445.111a(5), as Defendant made a telephone solicitation to a residential telephone subscriber whose name and residential telephone number is on the do-not-call list [Calls 1 through 11]; M.C.L. § 445.111b(1), as at the beginning of the telephone solicitation Defendant's representative person did not state the full number of the entity on whose being the call was initiated [Call 5]; and, M.C.L. § 445.111b(3), Defendant intentionally interfered with the caller ID function so that the telephone number displayed was not a teelephone number at which the called party may contact the caller [Calls 1 through 4, and 6 though 9].

**PRAYER FOR RELIEF**

WHEREFORE, the aforesaid premises considered, Plaintiff prays that this Court enter a judgment for Plaintiff and against Defendant, as follows:

A.   Damages:

    i.   Damages for violations of the TCPA alleged:

30

| Count | Violations |
|-------|------------|
| I     | 4          |
| II    | 11         |
| III   | 11         |
| IV    | 3          |
| V     | 1          |
| VI    | 8          |

A total of 38 violations at $500 per violation for damages of $19,000.00, which amount shall be trebled because the violations were willful and/or knowing, for total damages of $57,000.00.

ii.     Damages for violations of the MTCCA alleged at Count VII: 8 violations at $1,000 per violation, for damages of $8,000.00.

iii.    Damages for violation of the MHSSA alleged at Count VIII: 11 violations at $250 per violation, for damages of $2,750.00.

The cumulative total amount of damages claimed in this action is $67,750.00, and in the event of default judgment is the sum certain damages amount that will be sought.

B.  An award of Plaintiff's taxable costs and disbursements incurred in the filing and prosecution of this action;

C.  An injunction enjoining Defendants from initiating any telephone calls to

Plaintiff's residential telephone and cellular telephone lines.

D. Interest accruing from the date of filing until paid at the statutory rate; and,

E. Such other and further relief as this Court deems necessary, reasonable, prudent and proper under the circumstances.

Respectfully submitted,

Dated: June 24, 2024

_____
Mark W. Dobronski
Post Office Box 99
Dexter, Michigan 48130-0099
Telephone: (734) 641-2300
Email: markdobronski@yahoo.com
Plaintiff *In Propria Persona*

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

MARK W. DOBRONSKI

### DEFENDANTS

CHW GROUP, INC. d/b/a CHOICE HOME WARRANTY

**(b)** County of Residence of First Listed Plaintiff    ORANGE, FL
*(EXCEPT IN U.S. PLAINTIFF CASES)*

County of Residence of First Listed Defendant    MIDDLESEX, NJ
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:    IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*
MARK W. DOBRONSKI (Pro Se)
PO BOX 99
DEXTER, MI 48130-0099    (734) 641-2300

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- [ ] 1   U.S. Government Plaintiff
- [ ] 2   U.S. Government Defendant
- [x] 3   Federal Question *(U.S. Government Not a Party)*
- [ ] 4   Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

| | PTF | DEF | | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | [ ] 1 | [ ] 1 | Incorporated *or* Principal Place of Business In This State | [ ] 4 | [ ] 4 |
| Citizen of Another State | [ ] 2 | [ ] 2 | Incorporated *and* Principal Place of Business In Another State | [ ] 5 | [ ] 5 |
| Citizen or Subject of a Foreign Country | [ ] 3 | [ ] 3 | Foreign Nation | [ ] 6 | [ ] 6 |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

Click here for: Nature of Suit Code Descriptions.

| CONTRACT | TORTS | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|
| [ ] 110 Insurance | **PERSONAL INJURY**   **PERSONAL INJURY** | [ ] 625 Drug Related Seizure of Property 21 USC 881 | [ ] 422 Appeal 28 USC 158 | [ ] 375 False Claims Act |
| [ ] 120 Marine | [ ] 310 Airplane   [ ] 365 Personal Injury - | [ ] 690 Other | [ ] 423 Withdrawal 28 USC 157 | [ ] 376 Qui Tam (31 USC 3729(a)) |
| [ ] 130 Miller Act | [ ] 315 Airplane Product Liability    Product Liability | | | [ ] 400 State Reapportionment |
| [ ] 140 Negotiable Instrument | [ ] 320 Assault, Libel &   [ ] 367 Health Care/ | | **PROPERTY RIGHTS** | [ ] 410 Antitrust |
| [ ] 150 Recovery of Overpayment & Enforcement of Judgment |    Slander     Pharmaceutical Personal Injury | | [ ] 820 Copyrights | [ ] 430 Banks and Banking |
| [ ] 151 Medicare Act | [ ] 330 Federal Employers'     Product Liability | | [ ] 830 Patent | [ ] 450 Commerce |
| [ ] 152 Recovery of Defaulted Student Loans (Excludes Veterans) |    Liability   [ ] 368 Asbestos Personal [ ] 340 Marine     Injury Product | | [ ] 835 Patent - Abbreviated New Drug Application | [ ] 460 Deportation [ ] 470 Racketeer Influenced and Corrupt Organizations |
| [ ] 153 Recovery of Overpayment of Veteran's Benefits | [ ] 345 Marine Product     Liability Liability | | [ ] 840 Trademark [ ] 880 Defend Trade Secrets | [ ] 480 Consumer Credit (15 USC 1681 or 1692) |
| [ ] 160 Stockholders' Suits | [ ] 350 Motor Vehicle   **PERSONAL PROPERTY** | **LABOR** | Act of 2016 | [ ] 485 Telephone Consumer |
| [ ] 190 Other Contract | [ ] 355 Motor Vehicle   [ ] 370 Other Fraud | [ ] 710 Fair Labor Standards | | Protection Act |
| [ ] 195 Contract Product Liability |    Product Liability   [ ] 371 Truth in Lending | Act | **SOCIAL SECURITY** | [ ] 490 Cable/Sat TV |
| [ ] 196 Franchise | [ ] 360 Other Personal   [ ] 380 Other Personal | [ ] 720 Labor/Management | [ ] 861 HIA (1395ff) | [ ] 850 Securities/Commodities/ |
| |    Injury     Property Damage | Relations | [ ] 862 Black Lung (923) | Exchange |
| | [ ] 362 Personal Injury -   [ ] 385 Property Damage | [ ] 740 Railway Labor Act | [ ] 863 DIWC/DIWW (405(g)) | [ ] 890 Other Statutory Actions |
| |    Medical Malpractice     Product Liability | [ ] 751 Family and Medical | [ ] 864 SSID Title XVI | [ ] 891 Agricultural Acts |
| **REAL PROPERTY** | **CIVIL RIGHTS**   **PRISONER PETITIONS** | Leave Act | [ ] 865 RSI (405(g)) | [ ] 893 Environmental Matters |
| [ ] 210 Land Condemnation | [ ] 440 Other Civil Rights   **Habeas Corpus:** | [ ] 790 Other Labor Litigation | | [ ] 895 Freedom of Information |
| [ ] 220 Foreclosure | [ ] 441 Voting   [ ] 463 Alien Detainee | [ ] 791 Employee Retirement | **FEDERAL TAX SUITS** | Act |
| [ ] 230 Rent Lease & Ejectment | [ ] 442 Employment   [ ] 510 Motions to Vacate | Income Security Act | [ ] 870 Taxes (U.S. Plaintiff | [ ] 896 Arbitration |
| [ ] 240 Torts to Land | [ ] 443 Housing/     Sentence | | or Defendant) | [ ] 899 Administrative Procedure |
| [ ] 245 Tort Product Liability |    Accommodations   [ ] 530 General | | [ ] 871 IRS—Third Party | Act/Review or Appeal of |
| [ ] 290 All Other Real Property | [ ] 445 Amer. w/Disabilities -   [ ] 535 Death Penalty | **IMMIGRATION** | 26 USC 7609 | Agency Decision |
| |    Employment   **Other:** | [ ] 462 Naturalization Application | | [ ] 950 Constitutionality of |
| | [ ] 446 Amer. w/Disabilities -   [ ] 540 Mandamus & Other | [ ] 465 Other Immigration | | State Statutes |
| |    Other   [ ] 550 Civil Rights | Actions | | |
| | [ ] 448 Education   [ ] 555 Prison Condition | | | |
| |   [ ] 560 Civil Detainee -     Conditions of     Confinement | | | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- [x] 1   Original Proceeding
- [ ] 2   Removed from State Court
- [ ] 3   Remanded from Appellate Court
- [ ] 4   Reinstated or Reopened
- [ ] 5   Transferred from Another District *(specify)*
- [ ] 6   Multidistrict Litigation - Transfer
- [ ] 8   Multidistrict Litigation - Direct File

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
47 U.S.C. 227
Brief description of cause:
Illegal telemarketing calls

## VII. REQUESTED IN COMPLAINT:

- [ ] CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.

DEMAND $ 67,750.00

CHECK YES only if demanded in complaint:
JURY DEMAND:   [ ] Yes   [x] No

## VIII. RELATED CASE(S) IF ANY

*(See instructions)*
JUDGE _____     DOCKET NUMBER _____

DATE
June 24, 2024

SIGNATURE OF ATTORNEY OF RECORD

**FOR OFFICE USE ONLY**

RECEIPT # _____    AMOUNT _____    APPLYING IFP _____    JUDGE _____    MAG. JUDGE _____

## PURSUANT TO LOCAL RULE 83.11

1.          Is this a case that has been previously dismissed?                                    ☐ Yes
                                                                                                   ☑ No
   If yes, give the following information:

   Court: _____

   Case No.: _____

   Judge: _____


2.          Other than stated above, are there any pending or previously
            discontinued or dismissed companion cases in this or any other          ☐ Yes
            court, including state court? (Companion cases are matters in which      ☑ No
            it appears substantially similar evidence will be offered or the same
            or related parties are present and the cases arise out of the same
            transaction or occurrence.)

   If yes, give the following information:

   Court: _____

   Case No.: _____

   Judge: _____


Notes :



TRACKED
INSURED

...RMLY TO SEAL


FSC


PAPER
POUCH

PRESS FIRMLY TO SEAL

*Retail*



48226

0 Lb 8.90 Oz

RDC 03

U.S. POSTAGE PAID
PM
ANN ARBOR, MI 48103
JUN 24, 2024

**$9.85**

R2305P150937-02



PRIORI...
★ MAIL

...TES
...VICE®

...national Use

Label 107R, May 2014

# UNITED STATES
# POSTAL SERVICE ®

## PRIORITY®
## MAIL

**FROM:**

MARK W DOBRONSKI
PO BOX 99
DEXTER, MI 48130-0099

- Expected delivery date specified for domestic use.
- Domestic shipments include $100 of insurance (restrictions apply).*
- USPS Tracking® service included for domestic and many international destinations.
- Limited international insurance.**
- When used internationally, a customs declaration form is required.

*Insurance does not cover certain items. For details regarding claims exclusions see the Domestic Mail Manual at http://pe.usps.com.
** See International Mail Manual at http://pe.usps.com for availability and limitations of coverage.

U.S. MARSHALS

**TO:**

# FLAT RATE ENVELOPE
ONE RATE ■ ANY WEIGHT

# TRACKED ■ INSURED



To schedule free Package Pickup,
scan the QR code.

USPS.COM/PICKUP

UNITED STATES DISTRICT COURT
ATTN: CLERK'S OFFICE
231 W LAFAYETTE BLVD FL 5
DETROIT, MI 48226-2700



PS00001000014

EP14F October 2023
OD: 12 1/2 x 9 1/2


PAPER
POUCH

EXPECTED DELIVERY DAY:  06/26/24

USPS TRACKING® #



9505 5108 5131 4175 1886 85