UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

MARK W. DOBRONSKI,

               Plaintiff,                            Case No. 24-cv-11649
                                                  Honorable Linda V. Parker

v.

CHW GROUP, INC.,
d/b/a CHOICE HOME WARRANTY

               Defendant.
_____/

## OPINION AND ORDER DENYING DEFENDANT'S MOTION TO DISMISS

      This lawsuit arises from Plaintiff Mark W. Dobronski's receipt of eleven telemarketing calls to his four phone lines. Plaintiff, appearing pro se, alleges that Defendant CHW Group, Inc. or its agents initiated the calls for telemarketing purposes, and that the calls violated the Consumer Protection Act of 1991 ("TCPA") (Counts I-VI), the Michigan Telephone Companies as Common Carriers Act ("MTCCCA") (Count VII), and the Michigan Home Solicitation Sales Act ("MHSSA") (Count VIII).

      The matter is before the Court on Defendant's motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), which is fully briefed. (ECF Nos. 12, 13, 14.) Finding the facts and legal arguments adequately presented in the parties' submissions, the Court is dispensing with oral argument pursuant to Eastern

District of Michigan Local Rule 7.1(f).  For the reasons set forth below, the Court is denying Defendant's motion.

## I.    Standard of Review

To survive a Rule 12(b)(6) motion, a plaintiff must allege facts that are sufficient to "state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  The complaint need not contain "detailed factual allegations," but it must contain more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Id.* In deciding whether the complaint sets forth a plausible claim, the court must construe the complaint in the light most favorable to the plaintiff, accepting the allegations in the complaint as true and drawing all reasonable inferences in favor of the plaintiff. *Directv, Inc. v. Treesh,* 487 F.3d 471, 476 (6th Cir. 2007). "Threadbare recitals" of the elements of a legal claim, supported by only conclusory statements, however, do not suffice.  550 U.S. at 555.

## II.    Background

Plaintiff has four telephone numbers: three residential lines and one cellular line.  (ECF No. 1 at PageID.8 ¶¶ 34, 35.)  Plaintiff's residential lines are provided over Voice Over Internet Protocol ("VOIP") technology, so he can use the lines at his Michigan or Florida residence.  (*Id.* at PageID.9 ¶ 40.)  Plaintiff uses his cellular phone "primarily for personal, family, and household communications."

(*Id.* at PageID.8 ¶ 37.  All four numbers have been registered on the National Do Not Call Registry since May 27, 2022, and remained on the registry during the period of the alleged offenses.  (*Id.* ¶ 36.)

Defendant is incorporated in and has its principal business office in New Jersey.  (*Id*. at PageID.2 ¶ 3.)  Defendant does business under the name Choice Home Warranty (also "CHW").  (*Id.*)

A.    **Subject Phone Calls**

Between July 25, 2023, and February 6, 2024, Plaintiff received eleven phone calls from Defendant or its agents, spread across his four phone lines.  (*See* ECF No. 1 at PageID.14-26.)  Plaintiff received the calls at his residence in Washtenaw County, Michigan.  (*Id.*)  Plaintiff has never authorized Defendant or its agents to contact him, and he has no "established business relationship" with Defendant.  (*Id.* at PageID.10 ¶¶ 43-46.)

For each call, Plaintiff would answer the phone and hear a "boink" or click sound, followed by a multi-second delay, before a live person came on the line.  (*See* ECF No. 1 at PageID.14-26.)  Plaintiff provides these additional details about the calls:

- Calls 1 through 4, 7, 8, 10, and 11 all came from Michigan area codes, 734 or 810.

- For all calls but Call 5, the calling party identified themselves as "with" or "from" Choice Home Warranty (e.g. "John with Choice Home Warranty").  Plaintiff believes Call 5 to have come from the

same caller as in Call 4, George with Choice Home Warranty, although the caller failed to identify the company he was calling on behalf of.

- After the termination of Calls 1-9, Plaintiff dialed the caller identification number displayed to state a do-not-call demand. For Calls 1-8, the phone rang several times before going to a busy signal. For Call 9, the call was answered by a recorded message that asked Plaintiff to call back during normal business hours.

- In Calls 1, 6, 9, 10, and 11, Plaintiff asked the caller where Defendant was located. All callers indicated New Jersey prior to the termination of the call.

- In Calls 1-3, 5, and 9, the callers asked if Plaintiff was a homeowner and asked if he had ever heard of home warranty.

- In Call 4, the caller pre-qualified Plaintiff for home warranty, and asked Plaintiff for his credit card number. Plaintiff supplied a controlled credit card in order to log the merchant details with Plaintiff's financial institution. Plaintiff's financial institution did log the credit card charge attempt by Defendant.

- In Calls 6, 8, 10, and 11, the callers, in addition to asking Plaintiff questions about homeownership and home warranty, specifically pitched promotions or sales. The caller in Call 6 pitched a "summer sale today only promotion." In Call 8, the caller stated that Defendant was "running a promotion to homeowners in your area." The callers in Calls 10 and 11 called regarding "big game special" promotions.

(*Id.*)

### 1.    Demand for Do-Not-Call Policy: Calls 1, 9, and 10

During Calls 1, 9, and 10, Plaintiff asked the callers from Choice Home Warranty—John, Jamal (transferred by Marla), and Charlie (who then transferred to Dave)—for a copy of Defendant's do-not-call policy. (*Id.*) John responded,

4

"What's that?"  (*Id.* at PageID.14 ¶ 67.)  Jamal responded "no."  (*Id.* at PageID.23

¶ 141.)  Charlie responded "Yeah, sure, hold on," prior to transferring Plaintiff to

Dave, who responded that Defendant did not have a do-not-call policy.  (*Id.* at

PageID.24 ¶ 151.)

### B.    Plaintiff's Claims

Plaintiff asserts the following claims against Defendant:

(I)     Calls 3-6 violated the "telemarketing robocall" provision in 47
        C.F.R. § 64.1200(a)(2);

(II)    All eleven calls violated 47 C.F.R. § 64.1200(c)(2) as they were
        made to a telephone number on the National Do-Not-Call
        Registry

(III)   All eleven calls violated 47 C.F.R. § 64.1200(d) as they were
        made without the institution of procedures for maintaining an
        internal Do-Not-Call list;

(IV)    Calls 1, 9, and 10 violated 47 C.F.R. § 64.1200(d)(1) as the
        caller failed to provide a copy of the written policy for
        maintaining an internal Do-Not-Call list on behalf the person or
        entity making the call;

(V)     Call 5 violated 47 C.F.R. § 64.1200(d)(4), as the caller failed to
        provide the name or the person or entity on whose behalf the
        call was being made;

(VI)    Calls 1-4 and 6-9 violated § 64.1601(e)(1) by providing
        falsified caller identification information;

(VII)   Calls 1-4, 7, 8, 10, and 11 violated the MTCCA, specifically
        Mich. Comp. Laws § 484.125(2)(b), by activating a feature to
        block the display of caller identification information that would
        otherwise be available to the subscriber; and

(VIII) All calls violated the MHSSA, specifically Mich. Comp. Laws
§ 445.111a(5), by calling a number on the Do-Not-Call registry;
Call 5 violated Mich. Comp. Laws § 445.111b(1) as the caller
failed to provide the name or the person or entity on whose
behalf the call was being made; and Calls 1-4 and 6-9 violated
Mich. Comp. Laws § 445.111b(3) by interfering with the caller
ID function such that the number displayed was not a number at
which the called party may contact the caller.

(*See generally* ECF No. 1.)

## III.    Defendant's Arguments in Support of its Motion to Dismiss

Defendant maintains broadly that Plaintiff pleads only conclusory statements
to support the elements of his claims.  Defendant argues that Counts I through IV
should be dismissed because Plaintiff alleges insufficient facts to support the
inference that Defendant was either directly or vicariously liable for each of the
eleven calls, required for liability under the TCPA.  Defendant sets forth six other
grounds for dismissing Plaintiff's claims.

First, Defendant asserts that Plaintiff does not plead specific facts supporting
his claim under Count I, which requires Defendant to have used an automatic
telephone dialing system ("ATDS") in initiating calls to Plaintiff.  Next, Defendant
argues that Counts II through V, and by similar reasoning Count VII, are not viable
because Plaintiff has not satisfied the definition of "residential telephone
subscriber," and the calls were not "telephone solicitations," as defined in statutory
and regulatory language.  Third, Defendant posits that Counts III through V should
be dismissed because Plaintiff does not adequately allege that Defendant lacked an

6

internal DNC policy.  Fourth, Defendant argues that Counts III through V should be dismissed as duplicative of Count II.  Defendant reasons that Plaintiff would only be able to recover under one of his claims in Counts II through V, and thus only one claim should survive.  Fifth, Defendant maintains that there is no private right of action under 47 C.F.R. § 64.1691(e), and therefore Count VI should be dismissed.  Finally, Defendant argues that the MTCCCA applies only to intrastate commercial advertising in Michigan.  Given that Plaintiff alleges Defendant is in New Jersey, Defendant argues that any calls on behalf of Defendant to Plaintiff cannot be intrastate.

## IV.    Applicable Law & Analysis

### A.    Direct or Vicarious Liability: Counts I-IV

Defendant argues that Counts I through IV of the Complaint must be dismissed because Plaintiff presents only conclusory allegations that either Defendant or its agents are responsible for the calls.  As Defendant acknowledges, however, Plaintiff does allege a supporting fact: that in all calls aside from Call 5, the callers identified themselves as "with" or "from" Choice Home Warranty. (ECF No. 12 at PageID.70.)  Defendant qualifies this fact as insufficient, citing non-binding cases where courts found a telemarketer's indication of "association with" an entity during a call with a plaintiff insufficient to show that the entity

actually made the call.[1]  Defendant also faults Plaintiff for not providing enough

factual matter to establish that the calls came from a number belonging to

Defendant.  (*Id.* at PageID.73.)

This Court finds that Plaintiff alleges sufficient facts to plausibly claim

Defendant's liability for the subject calls.  Congress enacted the TCPA to give

consumers a private right of action against unwanted and intrusive telemarketing

practices.  *Parchman v. SLM Corp.*, 896 F.3d 728, 738-39 (6th Cir. 2018).  If a

caller's self-identification cannot be taken as an indication of their identity at the

pleading stage, a nigh insurmountable barrier would be erected against recovery

for consumers under the TCPA.  Facts alleged in a complaint need not be detailed,

and a plaintiff need not prove his case at this stage.  *United States ex rel. Bledsoe v.*

*Cmty. Health Sys.*, 501 F.3d 493, 502 (6th Cir. 2007).  Indeed, some facts, such as

Defendant's control over the phone numbers used to call Plaintiff, may be revealed

only through discovery.  Requiring plaintiffs to plead such facts initially would

impede the right to recovery under the TCPA. *See Johnson v. Parker-Hannifin*

---

[1] Defendant cites many out-of-circuit cases in an attempt to thread this argument.
But the cases Defendant cites are distinguishable.  For example, in *Aaronson v.*
*CHW Grp., Inc.*, No. 1:18-cv-1533, 2019 WL 8953349, at *2 (E.D. Va. Apr. 15,
2019), the complaint was devoid of facts such as "how the caller identified itself,
the substance of the calls, or any other details from the telephone calls that would
tend to identify defendant as the party that actually, physically took the steps to
place the calls to plaintiff's phone." Here, Plaintiff alleged details of each call,
including the caller's self-identification, the substance, and other details such as
click sounds and the amount of delay before a live person answered each call.

*Corp.*, 122 F.4th 205, 219 (6th Cir. 2024) (highlighting that a statute would fail to provide remedy if plaintiffs are required to plead facts tending "systematically to be in the sole possession of defendants").

Judges in this District and elsewhere have found that, at the pleading stage, it is sufficient that a caller self-identify as a representative of the defendant to infer that the defendant is responsible for the calls. *See, e.g., Hartley-Culp v. Green Tree Servicing, LLC*, 52 F. Supp.3d 700, 704 (M.D. Pa. 2014) (finding the complaint sufficient and the alleged facts non-conclusory when caller initiated call "on behalf of Fannie Mae"); *Dobronski v. Fam. First Life, LLC*, No. 22-cv-12039, 2024 WL 1342668, at *8 (E.D. Mich. Mar. 29, 2024) (finding the plaintiff's allegations sufficient when callers identified themselves as "affiliated with" defendant, whether under direct or vicarious liability) (internal quotations omitted); *Dobronski v. Baid*, No. 24-cv-10297, 2024 WL 3997059, at *2 (E.D. Mich. Aug. 29, 2024) (finding the plaintiff's allegations sufficient when callers self-identified as defendants' representatives, defendants were associated with the phone number calling, and defendants attempted to charge Plaintiff's controlled credit card). This Court holds that Plaintiff plausibly alleges Defendant's responsibility for the calls, and Plaintiff may proceed under a direct or vicarious theory of liability.

### B.      Use of ATDs: Count I

Defendant seeks dismissal of Count I, arguing that Plaintiff does not plead facts showing that it violated 47 U.S.C. § 227(b)(1)(A), which requires the caller to have used an ATDS in connection with the call.  (ECF No. 12 at PageID.76.) Defendant asserts that "federal courts across the country have correctly recognized that picking phone numbers from a 'pre-produced list,' as Plaintiff alleges, is not reflective of the use of a random or sequential number generator, and therefore precludes a finding of ATDS use."  (*Id.* at PageID. 77.)  Defendant insists that Plaintiff's receipt of four calls to the same number undermines a finding of ATDS use.  (*Id.* at PageID.78.)  Finally, Defendant argues that subsequent to the Supreme Court's latest decision addressing ATDS use under the TCPA—*Facebook, Inc. v. Duguid*, 592 U.S. 395 (2021)—a "pause" or a "click" on the calling line is no longer sufficient to support an inference that an ATDS was used.  (ECF No. 12 at PageID.78.)

The Supreme Court clarified in *Duguid* that "a necessary feature of an autodialer under § 227(a)(1)(A) is the capacity to use a random or sequential number generator to either store or produce phone numbers to be called."  592 U.S. at 409.  The Court said nothing about whether a pause or click at the start of the call may or may not be evidence that an ATDS is used.  Post-*Duguid*, courts recognize "a 'telltale' pause after a plaintiff picks up a call" as evidence supporting

a plausible claim that an autodialer was used.  *See, e.g., MacDonald v. Brian Gubernick PLLC*, No. CV-20-00138, 2021 WL 5203107, at *2 n.1 (D. Ariz. Nov. 9, 2021); *Anthony v. Pro Custom Solar, LLC*, No. CV20-01968, 2022 WL 17886032, at *4 (C.D. Cal. Nov. 14, 2022); *Morales v. Sunpath Ltd.*, No. 1:20-cv-01376, 2022 WL 17886032, at *8-9 (D. Del. Feb. 1, 2022) (citing *Marshall v. Grubhub Inc.*, No. 19-cv-3718, 2021 WL 4401496, at *4 (N.D. Ill. Sept. 27, 2021)).  Judges in this District also have held, including post-*Duguid*, that "multi-second delays and/or a 'boink' or clicking sound . . . before a live telemarketer comes on the line," or "spoofed or manipulated" caller identification are indicia that make an ATDS claim plausible.  *Dobronski v. Fam. First Life, LLC*, No. 22-cv-12039, 2024 WL 1342668, at *14-15 (E.D. Mich. Mar. 29, 2024); *see also Lopez v. Quicken Loans, Inc.*, 461 F. Supp. 3d 638, 645 (E.D. Mich. May 18, 2020).

Defendant cites a case where the court reached a contrary holding: *Laccinole v. Gulf Coast Collection Bureau, Inc.*, No. 22-223, 2023 WL 157719 (D.R.I. Jan. 11, 2023).  But the court in *Laccinole* cited no case law in support of its finding that the plaintiff's allegations of clicks and a pause were insufficient to plausibly claim the defendant's use of an ATDS.  *See id.* at *3.  And, again, nothing in *Duguid* leads to the conclusion that the indicia alleged by Plaintiff are no longer valid signs of ATDS.

Moreover, the Supreme Court even included the precise scenario alleged by Plaintiff in a footnote in *Duguid*:  "For instance, an autodialer might use a random number generator to determine the order in which to pick phone numbers from a preproduced list.  It would then store those numbers to be dialed at a later time."  592 U.S. at 407, n.7.

The Court also is not persuaded by Defendant's argument that a given phone number cannot be randomly dialed multiple times by an autodialer.  First, as indicated above, the necessary feature of an autodialer is its capacity to use a random or sequential number generator to *store* or produce numbers to be called.  Once stored, a number could be called repeatedly.  Indeed, many plaintiffs file suit under the TCPA due to the large quantity of calls they receive from telemarketers to a single phone number, and that is the precise grievance the TCPA is meant to address.  *See, e.g.*, *Ramsey v. Receivables Performance Mgmt., LLC*, 507 F. Supp. 3d 912, 919 (S.D. Ohio Dec. 15, 2020) (noting no dispute that 245 calls were made via ATDS to plaintiff's cell phone).  An ATDS can be the source of multiple calls to one phone number.

For these reasons, the Court is unpersuaded by Defendant's arguments regarding the use of an ATDS.  Plaintiff's allegations plausibly plead the improper use of an ATDS.  Defendant's motion as to Count I is denied.

### C.     "Do Not Call" Claims: Counts II-V, VIII

The TCPA delegated authority to the Federal Communications Commission ("FCC") to develop and implement regulations to protect the privacy rights of "residential telephone subscribers."  47 U.S.C. § 227(c).  Section 227(c)(5) creates a private right of action when a person receives "more than one phone call within any 12-month period by or on behalf of the same entity in violation of the regulations prescribed."  In Counts II through V, Plaintiff alleges violations of 47 C.F.R. § 64.1200(c) and (d), the FCC regulations developed to implement § 227(c) of the TCPA.  (ECF No. 1 ¶¶ 171-182.)  Section 64.1200(c)(2) makes it unlawful for any person or entity to "initiate any telephone solicitation to . . . [a] residential telephone subscriber who has registered his or her telephone number on the national do-not-call registry . . . maintained by the Federal Government."  Section 64.1200(d) makes it unlawful for any person or entity to initiate "any call for telemarketing purposes to a residential telephone subscriber unless such person or entity has instituted procedures for maintaining a list of persons who request not to receive such calls made by or on behalf of that person or entity."

### 1.     Residential Telephone Subscriber

Both the TCPA's statutory text and the FCC regulations' do-not-call ("DNC") provisions specify that a plaintiff must be a "residential telephone subscriber."  47 U.S.C. § 227(c); 47 C.F.R. § 64.1200(c), (d).  Defendant contends

that a plaintiff asserting a DNC claim must present facts establishing that a phone number receiving a subject call is "actually used" for residential purposes, linking the proof of "actual use" to whether a phone number is the "primary means of reaching an individual at their residence.  (ECF No. 12 at PageID. 79-80.) Plaintiff's claims fall short, Defendant argues, because Plaintiff cannot possibly have four numbers that serve as the "primary means" of reaching him at his residence.  (*Id.* at PageID. 81.)

The TCPA does not define "residential telephone subscriber," and FCC regulations provide no greater clue by defining "residential subscriber" as "not a business subscriber."  47 C.F.R. § 64.2305(d).  But the FCC has issued an order finding that limiting residential subscribers to mean "telephone service used primarily for communications in the subscriber's residence" is "far too restrictive." *In Re Rules & Regulations Implementing the Tel. Consumer Prot. Act of 1991*, 18 F.C.C. Rcd. 14014, 14038 ¶ 34-35 (2003). The FCC specified that there is nothing in the TCPA to suggest that "only a customer's 'primary residential telephone service' was all Congress sought to protect."  *Id.* at ¶ 35.  In addition, the FCC found that because the determination of "whether a particular wireless subscriber is a 'residential subscriber'" is "fact-intensive", wireless subscribers on the national do-not-call list will be presumed to be "residential subscribers."  *Id.* at ¶ 36.

At this stage, Plaintiff's allegations are sufficient to qualify him as a residential telephone subscriber under the TCPA.  Plaintiff alleges that his three VOIP numbers are residential, that his cell phone is primarily used for "personal, family, and household communications," and that all four numbers have been registered continuously on the National DNC Registry since May 27, 2022.  (ECF No. 1 at ¶¶ 34-37.)  Because Plaintiff's numbers are on the DNC Registry, Plaintiff is entitled to the FCC's presumption of residential telephone subscriber.

Defendant also argues for dismissal of Plaintiff's MHSSA claim under the same reasoning.  The MHSSA prohibits telephone solicitors from making a "telephone solicitation to a residential telephone subscriber whose name and residential telephone number is on the then-current version of the federal list."  Mich. Comp. Laws § 445.111(a)(5).  Defendant contends that because Plaintiff does not allege facts establishing his telephone number is "actually used" for residential purposes, Plaintiff's MHSSA claim should be dismissed.  (ECF No. 12 at PageID. 87.)

The MHSSA defines "residential telephone subscriber" as "a person residing in this state who has residential telephone service."  Mich. Comp. Laws § 445.111(l)(l).  Like its federal counterpart, the Michigan statute does not define "residential telephone service."  The Michigan Court of Appeals has determined that the "relevant limiting term in the statute is 'residential,' i.e., the location of the

user." *Dobronski v. Transamerica Life Ins. Co.*, 13 N.W.3d 895, 903 (Mich. Ct. App. 2023). Rather than focusing on the type of device used by the subscriber, the Michigan legislature "intended to focus the protections on the place where the call was received." *Id.* "An individual who receives a solicitation to his cellular telephone, while located at his residence, is just as vulnerable as an individual who receives a solicitation to his home phone over a landline." *Id.*

Plaintiff alleges that he was at his residence in Washtenaw County, Michigan, when he received all of the subject calls. Accordingly, Plaintiff satisfies the definition of "residential telephone subscriber" as defined by the MHSSA.

### 2.     Telephone solicitation calls

Defendant seeks dismissal of Counts II through V, arguing that Plaintiff does not sufficiently support his assertion that the calls were telephone solicitations, as required for stating a claim under § 227(c) of the TCPA. (ECF No. 12 at PageID.82.) 47 C.F.R. § 64.1200(f)(15) defines a telephone solicitation as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of, or investment in, property, goods, or services."

Defendant cites several cases to support its argument, but the cases cited are readily distinguishable from the matter before the Court.[2] For example, in *Dahdah*

---

[2] In *Gulden v. Consol. World Travel Inc.*, 2017 WL 3841491 (D. Ariz. Feb. 15, 2017), and *Weingrad v. Top Healthcare Options Ins. Agency Co.*, 2024 WL 4228149 (E.D. Pa. Sept. 17, 2024), the plaintiffs failed to plead anything more than

*v. Rocket Mortgage, LLC*, No. 22-cv-11863, 2023 WL 5941730, at *3 (E.D. Mich. Sept. 12, 2023), the court found it difficult to infer the calls were telephone solicitations because the complaint alleged that "no one was one the other end of the call" or that "defendant was trying to reach someone else."[3]  If no one was on the line, the court reasoned, there could be no inference drawn as to the purpose of the calls.  *Id.*  If the defendant indicated that it was trying to call someone other than the plaintiff, then the Court would find that the intent of the call was not to encourage the plaintiff to buy services from the defendant.  *Id.*

Here, the Court finds little difficulty in inferring that the calls described in the Complaint were indeed telephone solicitations.  Plaintiff alleges sufficient facts to support that Defendant's calls were telephone solicitations, including pre-qualification questions, attempts to sell a home warranty, explicit sale promotions, and an attempted charge to his credit card.  (ECF No. 1 ¶¶ 62-164.)

---

legal conclusions.  The plaintiff in *Gulden* provided no description of the calls. *Gulden*, 2017 WL 3841491, at *3.  The plaintiff in *Weingrad* failed to even plead that he received more than one call within twelve-months from the defendant, as required to state a claim under § 227(c) of the TCPA.  *Weingrad*, 2024 WL 4228149, at *3.

[3] Notably, the district court subsequently reconsidered its decision.  *See Dahdah v. Rocket Mortg., LLC*, No. 22-cv-11863, 2023 WL 1194444898 (E.D. Nov. 17, 2023).

### 3.    Internal DNC Procedures

From what the Court can discern, Defendant seeks dismissal of Counts III through V based on its contention that Plaintiff does not adequately allege that Defendant had inadequate internal DNC procedures prior to making the subject calls.  (ECF No. 12 at PageID. 84-85.)  Defendant asserts that Plaintiff neither pleads facts regarding the state of Defendant's internal procedures nor describes how those procedures fell short of regulatory requirements.  (*Id.* at PageID. 85.)

In support of its argument, Defendant cites *Charvat v. GVN Michigan, Inc.*, 561 F.3d 623 (6th Cir. 2009), to argue that the only actual violation of the TCPA regulations occurs when a telemarketer initiates a call without having "implemented the minimum procedures."  (ECF No. 12 at PageID. 84.)  This principle, however, is in line with Plaintiff's allegations in Count III that Defendant has no DNC policy or procedure in place and in Counts IV and V that Defendant has failed to meet the minimum procedures.

Plaintiff adequately pleads violations of the DNC policy requirement to survive a motion to dismiss.  Plaintiff alleges multiple instances of when he requested a copy of Defendant's DNC policy.[4]  (ECF No.13 at PageID.106-107.)

---

[4] *Barr v. Macys.com, LLC*, No. 22-cv-07867, 2023 WL 6393480, at *5 (S.D.N.Y. Sept. 29, 2023), an authority on which Defendant relies, states that "a plaintiff may bolster her subsection (d)(1) allegation by requesting an Internal DNC list from defendant."  *Barr* is distinguishable because the plaintiff made no such request.  *Id.*

He received a negative answer each time.  (*Id.*)  Plaintiff alleges all he is able to

without discovery, as Defendant's implementation of internal procedures or lack

thereof is likely in its sole possession.[5]

### 4. Duplicative Damages

Defendant bases its final argument in favor of dismissing Counts III through

V on Plaintiff's damages calculation.  Defendant asserts that because Plaintiff can

recover only on a "per-call" rather than a "per violation" basis, these claims must

be dismissed as duplicative of Count II.  (ECF No. 12 at PageID. 85-86.)

Defendant seems to overlook a fundamental tenet of civil litigation:

plaintiffs may plead multiple theories of recovery in a case, even if recovery is

only permitted under one.  *See* Fed. R. Civ. P. 8(d).  Plaintiff does not fail to state

his claims even if he does miscalculate damages in the event of recovery.

Defendant's damages argument is unavailing.

### D. Private Right of Action Under 47 C.F.R. § 64.1601(e)

Relying on cases previously decided in this District, Defendant argues that

Plaintiff cannot state a claim under 47 C.F.R. § 64.1601(e)(1).  In *Dobronski v.*

*Selectquote Insurance Services*, 462 F. Supp. 3d 784 (E.D. Mich. 2020), and

---

[5] *Laccinole v. Rocket Mortgage, LLC*, 609 F. Supp. 3d 68 (D.R.I. 2022), and
*Laccinole v. Appriss, Inc.*, 453 F. Supp. 3d 499 (D.R.I. 2020), which Defendant
cites, are not persuasive as the plaintiffs failed to adequately plead content from the
subject calls.

*Dobronski v. Total Insurance Brokers, LLC*, No. 21-cv-10034, 2021 WL 4452218 (E.D. Mich. Sept. 29, 2021), Magistrate Judge Anthony Patti and District Judge Judith Levy, respectively, concluded that § 64. 601(e)(1) does not support a private right of action. *See* 462 F. Supp. 3d at 790; 2021 WL 4452218, at *3. While this remains the majority view, Plaintiff cites decisions which he argues supports finding a private right of action. *See Newell v. JR Capital, LLC*, -- F. Supp. 3d --, No. 2025 WL 2004706 (E.D. Pa., July 16, 2025); *Dobronski v. Selectquote Ins. Servs.*, 773 F.Supp.3d 373 (E.D. Mich. 2025); *Worsham v. LifeStation, Inc.*, No. 661, 2021 WL 5358876 (Md. Ct. Spec. App. Nov. 17, 2021).

As Judge Murphy reasoned in *Selectquote*—reasoning adopted by the district court in *Newell*—§ 64.1601(e) must derive its authority from some part of the TCPA. 773 F.Supp.3d at 376. Section 227(e)(3) is quickly ruled out because it was added years after the promulgation of § 64.1601(e)(1). *Id.* Section 227(d) must also be ruled out, however, as § 64.1601(e)(1) applies to all telemarketing calls, while § 227(d) relates only to fax machines, automatic telephone dialing systems, and artificial and prerecorded voice messages. *Id.*; *see also* 47. U.S.C. § 227(d). Therefore, § 227(d) cannot grant the legislative authority needed to support § 64.1601(e)(1). *Id.* Section 227(b)(2) only applies to automatic telephone dialing systems, and thus suffers from a similar defect as § 227(d). *Id.* This leaves

§ 227(c)(5) as the only viable source of statutory authority for § 64.1601(e)(1).

And § 227(c)(5) does support a private right of action.

Finding Judge Murphy's reasoning persuasive, this Court concludes that

§ 64.1601(e)(1), through § 227(c)(5)(B), provides a private right of action.

Accordingly, Defendant's motion to dismiss as to Count VI is denied.

### E.    Violation of MTCCCA

Defendant contends that Count VII of the Complaint, claiming a violation of

the MTCCCA, must be dismissed because Michigan Compiled Laws

§ 484.125(2)(b) only applies to intrastate calls.  "Intrastate" in the MTCCCA

means "originating and delivering within this state."  *Id.* § 484.125(1)(c).

Defendant argues that elsewhere in the Complaint, Plaintiff alleges that Defendant

is located in New Jersey, and therefore any calls originating from Defendant cannot

be an "intrastate" call.  (ECF No. 12 at PageID.86-87.)

As Plaintiff correctly points out, however, it is the location where the calls

were initiated that determines the intrastate nature of the call.  (ECF No. 13 at

PageID. 110.)  Plaintiff has alleged that he received his calls at his residence in

Michigan, and that the calls relevant to Count VII displayed numbers with

Michigan area codes.  (*Id.* at PageID.111.)  It is of no import if Plaintiff pleads

contradictory facts; pursuant to Federal Rule of Civil Procedure 8(d)(3), Plaintiff

may state as many separate claims as he has, "regardless of consistency."

Here, Plaintiff plausibly alleges that the calls displaying Michigan area codes originated in Michigan, and therefore were intrastate calls under the definition of the MTCCCA.  *See Dobronski v. Tobias & Associates, Inc.*, 769 F. Supp. 3d 681, 705 (E.D. Mich. Mar. 7, 2025) (same).  As such, Plaintiff's claim is viable, and Defendant's motion as to Count VII is denied.

## V.   Conclusion

For the reasons set forth above, the Court rejects Defendant's arguments in support of the dismissal of Plaintiff's claims.

Accordingly,

**IT IS ORDERED** that Defendant's motion to dismiss (ECF No. 12) is **DENIED**.

s/ Linda V. Parker
LINDA V. PARKER
U.S. DISTRICT JUDGE

Dated: August 21, 2025